UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| CHRISTOPHER ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.: **2:21-cv-66** |
| | ) |
| FRANCHISE GROUP, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Serve:**

    **Franchise Group, Inc.**
    **Attn: C T Corporation System, Registered Agent**
    **4701 Cox Road, Ste. 285**
    **Glen Allen, Virginia 230060**

## COMPLAINT

COMES NOW the Plaintiff, Christopher Robinson ("Robinson"), by counsel, for his Complaint against the Defendant, Franchise Group, Inc. ("Liberty Tax"), and hereby states as follows:

### The Parties

1. Robinson is an individual domiciled in Arkansas.

2. Liberty Tax is a Delaware corporation with its headquarters and principal place of business located at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454.

3. Liberty Tax is a successor in interest to and is formally known as JTH Tax, Inc. d/b/a Liberty Tax Service.

### Subject Matter Jurisdiction

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

**Personal Jurisdiction**

5. Personal jurisdiction over Liberty Tax exists in Virginia because, among other reasons, Liberty Tax is incorporated in Virginia.

**Venue**

6. Venue is proper in this Court because, among other reasons, it is a permissible venue under 28 U.S.C. § 1391 as a district in which Liberty Tax is subject to personal jurisdiction.

**Statement of Facts**

7. Liberty Tax is in the business of selling franchises engaged in the preparation of tax returns as well as Area Development ("AD") territories that support the franchises within their prescribed geographic boundaries.

8. Robinson is a sole proprietor party to an AD agreement with Liberty Tax.

9. Robinson is a member of the Liberty Tax Area Developers Association, a private organization that exists to help protect the interest of Liberty Tax Area Developers (also, "AD" or "Ads").

10. On or about December 29, 2006, Robinson entered into an AD agreement (the "AD Agreement") with Liberty Tax to solicit and recruit candidates to become franchise owners in seven separate counties near Jonesboro, Arkansas. *See* attached **Exhibit A**.

11. In exchange, Liberty Tax contracted to pay Robinson a percentage of franchise fees and franchise royalties received by Liberty Tax from franchises within Robinson's designated territory.

12. The payment of any royalties, franchise fees, and/or interest collected by Liberty Tax from a franchisee was to be paid to Robinson "not later than the last day of the next calendar month."

13. E-filing fees are considered a tax preparation fee and must be included within the calculations when determining royalty payments to ADs.

14. The AD Agreement was set to expire on December 29, 2016.

15. Paragraph 8.2 of the AD Agreement contains a renewal provision by which Robinson can renew the AD Agreement upon notice at least six months prior to the expiration of the AD Agreement .

16. In 2016, at least 180 days before December 29, 2016, Robinson verbally notified Liberty Tax of his intent to renew the AD Agreement.

17. At all relevant times, the following were well-known general corporate policy and practice at Liberty Tax, as set forth by Liberty Tax and its leadership: (1) strict 180-day renewal notices for AD territories were not generally enforced when entities and agreements were in good standing and (2) though written notice to renew was required by Liberty Tax's agreements, oral notice of territory renewals were generally accepted by Liberty Tax.

18. Robinson never received a renewal AD agreement from Liberty Tax.

19. After the AD Agreement's expiration date on December 29, 2016, Liberty Tax continued to pay Robinson his share of franchise fees and royalties collected from franchises in Robinson's territory, with the exception of e-filing fees. As a result, Robinson also continued to perform his obligations under the AD Agreement and engaged in another several tax seasons.

20. On or about June 27, 2018, Robinson was contacted by the AD Program Coordinator for Liberty Tax, Liza Malinis. Ms. Malinis acknowledged both that Liberty Tax had received Robinson's notice of his intent to renew and that Robinson was waiting to receive a new development schedule in order to complete the renewal process. *See* attached **Exhibit B.**

21. On or about July 10, 2018, Ms. Malinis contacted Robinson to inquire about the status of his renewal. Robinson asked Ms. Malinis where he could find the renewal AD agreement but received no response. *See* attached **Exhibit C.**

22. On or about July 13, 2018, another representative from Liberty Tax's corporate office in Virginia Beach, Deb Forester, contacted Robinson. Ms. Forester acknowledged that although Robinson's initial AD Agreement had otherwise expired on December 29, 2016, the AD Agreement was in the renewal process. *See* attached **Exhibit D.**

23. Robinson reasonably believed Ms. Forester's confirmation that he was in the renewal process was because of his timely oral request to renew and Liberty Tax's acknowledgement of the same.

24. Robinson again asked that the renewal AD agreement be sent to him for his review and execution.

25. Ms. Forester referred the matter back to Ms. Malinis and asked that she send the requested agreement to Robinson.

26. Ms. Malinis again confirmed that the renewal agreement should include a new development schedule and Robinson, yet again, stated that he had still not received the renewal AD agreement.

27. In 2018, Robinson was contacted by the Vice President of AD for Liberty Tax, Cory Hughes, regarding Liberty Tax's desire to buy back his AD territory. Robinson informed Mr. Hughes that he was not interested in selling his territory.

28. Robinson reasonably believed that Mr. Hughes' request to buy back his AD territory was because Robinson continued to own that territory based upon his timely oral request to renew his AD Agreement.

29. On or about August 12, 2019, Mr. Hughes contacted Robinson again, and instructed him to contact Renee Harvey at Liberty Tax's corporate office in Virginia Beach regarding the renewal process. *See* attached **Exhibit E.**

30. Robinson left Ms. Harvey a voicemail the same day and informed Mr. Hughes of same. Robinson never received a response from Ms. Harvey.

31. On or about August 14, 2019, Robinson was surprised to receive correspondence from Liberty Tax's CEO, Brent Turner, stating that Liberty Tax was accepting and agreeing to Robinson's "voluntary election to non-renew" and, therefore, his rights to the territories listed in the AD Agreement were terminated effective immediately. *See* attached **Exhibit F.**

32. Robinson immediately replied that he *did* wish to renew and that he had repeatedly informed Liberty Tax of this intent.

33. Robinson also informed Mr. Hughes that he never received a return phone call from Ms. Harvey or anyone else. Mr. Hughes responded that he would contact Ms. Harvey.

34. After August 14, 2019, Robinson received no further communications from Mr. Hughes or any other representative of Liberty Tax.

35. At some point in 2018, Liberty Tax released new uniform agreements (the "Revised AD Agreements") to be entered into by all new ADs that contained materially different terms than those contained within the AD Agreement signed by Robinson (as well as other ADs similarly situated).

36. While Liberty Tax initially informed existing ADs that they would be permitted to renew their AD agreements with addendums to the Revised AD Agreements so that the terms would be the same as their existing AD agreements, Liberty changed course and began requiring all ADs to execute the Revised AD Agreements as-is if they wished to renew.

37. The original AD agreement signed by Robinson contains the following provision under Paragraph 8.2:

> If Area Developer wishes to renew *this Agreement*, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement.

(emphasis added).

38. As of 2020, and upon information and belief 2021, Liberty Tax requires all renewing ADs to execute the Revised AD Agreement, and Liberty Tax no longer permits ADs to renew their existing AD agreements.

## COUNT I
## BREACH OF CONTRACT- WRONGFUL TERMINATION AND FAILURE TO PAY FRANCHISE FEES

39. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully stated herein.

40. Liberty's correspondence of August 14, 2019 cites an alleged failure by Robinson to notify Liberty in writing of his intent to renew the AD Agreement at least 180 days prior to the expiration as representing a voluntary non-renewal.

41. However, Robinson did provide timely notice of his intent to renew. Liberty was clearly on notice of Robinson's intent to renew as reflected in repeated communications from the corporate office.

42. To the extent that the method by which Robinson gave his notice did not comply with the requirements of the AD Agreement, Liberty waived strict performance of that provision by acknowledging its receipt of same and by continuing the contractual relationship by making payments to Robinson after December 29, 2016.

43. Paragraph 8.5 of the AD Agreement states in relevant part that "Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration."

44. However, Liberty Tax continued to make payments to Robinson for his share of franchise fees and royalties after the AD Agreement's expiration date on December 29, 2016, and Robinson, in turn, continued to perform as required under the AD Agreement.

45. As a result, Liberty Tax's letter of August 14, 2019 was a termination action, not a non-renewal action.

46. Paragraph 8.3(b) of the AD Agreement gives an exclusive list of causes for which Liberty Tax is permitted to terminate an AD without providing an opportunity to cure. Liberty Tax's August 14, 2019 correspondence does not cite any of those causes as reason for termination.

47. Further, Paragraph 8.3(b)(iv) of the AD Agreement states in relevant part that Liberty Tax may terminate the agreement if the "Area Developer fails to perform any material obligation under the Agreement ("Breach"), and such failure has continued for thirty days after Liberty Tax sent written notice of such Breach to Area Developer."

48. Robinson performed as required under the AD Agreement and was at no point in breach of any material obligation.

49. Further, Liberty Tax never issued Robinson notice indicting that it believed Robinson to be in breach.

50. Paragraph 3.3 of the AD Agreement states that Liberty Tax will pay "an amount equal to 50% of all ongoing royalties received by Liberty Tax, if any, from a Franchisee during the Term."

51. Paragraph 3.10 states that "Liberty will pay Area Developer its share of royalties or franchise fees not later than the last day of the next calendar month."

52. Liberty Tax breached the terms of the AD Agreement in at least two ways:

53.     First, Liberty Tax terminated the AD Agreement without notice or opportunity to cure as required.

54.     Second, Liberty Tax failed to pay the full share of royalties and fees owed to him, specifically, his portion of the e-filing fees charged by Liberty Tax to the Franchisees, by the deadline stated in paragraph 3.10

55.     Robinson has been damaged as a direct and proximate result of Liberty Tax's breaches in the amount of the franchise royalties not fully and timely paid to him by Liberty Tax, and in the amount of future royalties lost due to the wrongful termination.

WHEREFORE, in consideration of the foregoing, the Plaintiffs respectfully request the following relief:

1. An order requiring specific performance that Liberty Tax reinstate and/or renew Robinson's AD agreement, that Liberty Tax pay any royalties and payments owed to Robinson under the AD Agreement, and pay that Liberty Tax those royalties and fees that would have been otherwise due to be paid to Robinson during the time period when the AD agreement was wrongfully terminated;

2. In the alternative, direct and consequential damages in the amount of $1,114,00;

3. An order awarding to Robinson his costs and expenses incurred as a result of filing this lawsuit; and

4. Such other and further relief as this Court may deem just and proper.

## COUNT II
## BREACH OF CONTRACT – FAILURE TO PROVIDE RENEWAL AGREEMENT UNDER THE SAME TERMS

56.     Plaintiff repeats and re-alleges the foregoing paragraphs as if fully stated herein.

57. Liberty Tax's actions have made it impossible for Robinson to renew the agreement, in violation of the terms of the AD Agreement.

58. Paragraph 8.2 of the AD Agreement provides that Robinson would have the opportunity to renew the agreement upon notification to Liberty Tax of the intent to renew.

59. Robinson verbally notified Liberty Tax of his intent to renew the AD Agreement more than 180 days in advance of its expiration.

60. However, Liberty Tax failed to present Robinson with an AD renewal agreement for his review and execution, despite his repeated requests for the same.

61. Additionally, Liberty Tax's representation in its August 14, 2019 correspondence that Robinson was provided "the option to enter into a new area developer agreement with Liberty at the time of the expiration of the Area Developer Agreement" is false. No such agreement was ever presented to Robinson.

62. Liberty Tax's failure to provide the AD renewal agreement prevented Robinson from exercising his right to renew the agreement. This interference with Robinson's contractual rights constitutes a breach of the terms of the AD Agreement.

63. Further, Paragraph 8.2 of the AD Agreement entitles Robinson to the opportunity to renew the *same* agreement he entered into in 2006.

64. However, Liberty Tax does not presently allow any existing AD to renew their existing agreements, and instead Liberty Tax requires all existing ADs enter into the materially different terms provided for in the Revised AD Agreements.

65. The Revised AD Agreements contain material changes to the terms and conditions of the agreement, including the following changes:

a) Paragraph 3.3 of the Revised AD Agreements does not specify the percentage of fees or royalties payable to ADs and it should provide for the same 50% compensation as the original AD agreement. Specifically, the Revised AD Agreement removes the AD's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised AD Agreements require ADs to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores;

b) Paragraphs 3.14, 3.15, and 3.16 were added which includes the ability for Liberty Tax to deduct amounts allegedly owed to Liberty Tax from payments to the AD, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement;

c) Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from ADs and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee does not meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals;

d) Paragraph 8.1 was amended to reduce the term of the agreement from ten years to six years;

e) Paragraph 8.8(f) was added to impose liability on the AD for any attorney's fees Liberty Tax incurred in enforcement of the agreement or its successful defense of such an action by the AD.

66. Among other things, under the Revised AD Agreement Robinson would make less profit from his territory than he would have under the original agreement.

67. These material changes alter the nature of the AD Agreement and, therefore, constitute a breach of Paragraph 8.2's provision for Robinson to be able to renew the *same* agreement.

WHEREFORE, in consideration of the foregoing, the Plaintiffs respectfully request the following relief:

1. An order requiring specific performance that Liberty Tax provide an AD renewal agreement to Robinson under the same material terms and conditions as Robinson's original AD Agreement;

2. In the alternative, direct and consequential damages in the amount of $1,114,00;

3. An order awarding to Robinson his costs and expenses incurred as a result of filing this lawsuit; and

4. Such other and further relief as this Court may deem just and proper.

## COUNT III
## IN THE ALTERNATIVE, FRAUD

68. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully stated herein.

69. In the alternative to Counts I and II for breach of contract, Liberty Tax defrauded Robinson by its repeated false representations that he was in the process of renewal, representations that Robinson reasonably relied upon and thereby continued to develop the AD territory until he was terminated.

70. By continuing to allow Robinson to operate after the expiration date of his AD Agreement, Liberty Tax was engaged in a relationship with Robinson outside the AD Agreement.

71. According to Liberty Tax's August 14, 2019 correspondence, Robinson was not eligible to renew the AD Agreement for failure to provide written notice 180 days prior to the expiration date.

72. Liberty Tax representatives continued to represent to Robinson that he was, in fact, in the process of renewing the AD Agreement for almost three years beyond the stated expiration of the AD Agreement.

73. However, according to the terms of the August 14, 2019 correspondence, the repeated representations of Liberty Tax over the prior three tax seasons—i.e., that he was in the process of renewal—were false.

74. Robinson's alleged failure to timely renew was a fact known to Liberty Tax by June 29, 2016, and therefore the representations Liberty Tax made over three years were all false when made.

75. Based on the long-standing corporate policy as set by Liberty Tax's leadership that Liberty Tax would not strictly enforce the renewal and notice provisions of the AD Agreement, Robinson justifiably relied on Liberty Tax's representations that he was in the process of renewal and that a renewal AD agreement would be forthcoming.

76. As such, Robinson engaged in developing additional franchises, supported existing franchises, and generating revenue for Liberty Tax for several tax seasons beyond the stated expiration of the AD Agreement without any knowledge or reasonable expectation that Liberty Tax would terminate this relationship without notice or justification.

77. Liberty Tax's actions in luring Robinson under false pretenses to continue operating his AD territory were willful and malicious acts made with no purpose other than to generate three

additional years of revenue for Liberty Tax and reap the benefits of Robinsons' continue efforts to develop the territory.

78. Robinson was damaged as a result of Liberty Tax's false representations. If he had known that Liberty Tax was not going to accept his oral renewal notice, he would have demanded to exercise his alternate rights under Paragraph 8.2 to enter into a "new agreement" or, alternatively, would not have continued to develop the territory and support the existing franchisees.

WHEREFORE, in consideration of the foregoing, the Plaintiffs respectfully request the following relief:

1. Award to Robinson direct and consequential damages in the amount of $1,500,00, and punitive damages in the amount of $350,000;
2. Award to Robinson his attorneys' and costs incurred in bringing this action; and
3. Such other and further relief as this Court may deem just and proper.

## COUNT IV
## DECLARATORY JUDGMENT

79. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully stated herein.

80. The renewal provision of the AD Agreement states that the AD may renew "this Agreement".

81. However, Liberty Tax released Revised AD Agreements with materially different terms that are uniformly provided to all ADs as the basis for any renewed agreements.

82. The Revised AD Agreements include the following material changes:

   a) Paragraph 3.3 of the Revised AD Agreements does not specify the percentage of fees or royalties payable to ADs and it should provide for the same 50% compensation as the original AD agreement. Specifically, the Revised AD

Agreement removes the AD's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised AD Agreements require ADs to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores;

b) Paragraphs 3.14, 3.15, and 3.16 were added which includes the ability for Liberty Tax to deduct amounts allegedly owed to Liberty Tax from payments to the AD, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement;

c) Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty re-acquires from ADs and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee does not meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals;

d) Paragraph 8.1 was amended to reduce the term of the agreement from ten years to six years;

e) Paragraph 8.8(f) was added to impose liability on the AD for any attorney's fees Liberty Tax incurred in enforcement of the agreement or its successful defense of such an action by the AD.

83. An actual justiciable controversy exists by way of Liberty Tax's breach of its contractual obligation to provide Robinson with the opportunity to renew the same agreement because Robinson is seeking specific performance to allow him to renew his AD Agreement and Liberty Tax now requires all renewing ADs to sign the Revised AD Agreements.

84. Pursuant to 28 U.S.C. § 2201, Robinson is entitled to declaratory judgment that the terms of the original AD agreement provide him the right to renew the same agreement without a material alteration of the terms and conditions.

WHEREFORE, in consideration of the foregoing, Robinson respectfully requests the following relief:

1. An order declaring that the original AD agreement entered into by Robinson requires Liberty Tax to provide the opportunity for his to renew the *same* agreement, i.e. "this agreement," and not some other materially changed agreements;

2. An order declaring that the Revised AD Agreements contain material differences from the original AD agreement entered into by Robinson;

3. An order declaring that the renewal AD agreement to be provided by Liberty Tax to Robinson upon the specific performance referenced above in Counts I and II must be under the same material terms and conditions as the original AD Agreement signed by Robinson;

4. An order awarding to Robinson his costs and expenses incurred as a result of filing this lawsuit; and

5. Such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

**CHRISTOPHER ROBINSON**

By: ___/s/ Christopher D. Davis___
       Of Counsel

Christopher D. Davis, Esq. (VSB No.: 74809)
Destinee B. Byers, Esq. (VSB No.: 94691)

Erin C. McDaniel, Esq. (VSB No.: 94884)
Davis Law, PLC
555 Belaire Ave., Suite 340
Chesapeake, Virginia 23320
Telephone: (757) 410-2293
Facsimile: (757) 257-8614
chris@davislawplc.com
destinee@davislawplc.com
erin@davislawplc.com
*Counsel for Plaintiff*